UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
DAVID W. QUALLS, et al.,           )
                                   )
         Plaintiffs,               )
                                   )
    v.                             )   Civil Action No. 04-2113 (RCL)
                                   )
DONALD RUMSFELD, et al.,           )
                                   )
         Defendants.               )
_____)

MEMORANDUM AND ORDER

Plaintiffs, David Qualls and six John Does ("Doe plaintiffs"), are soldiers currently serving in Iraq or currently serving in Kuwait but en route to Iraq. Each has been serving in the Army pursuant to an enlistment contract that specifies a term of service. Defendants, the Secretary of Defense, the Secretary of the Army, and the Assistant Secretary of the Army for Manpower and Reserve Affairs, have extended plaintiffs' terms of service against plaintiffs' wishes by means of the Stop Loss program. Plaintiffs challenge these involuntary extensions and the validity of Stop Loss. Already, the Court has considered and denied David Qualls' motions for a Temporary Restraining Order and Preliminary Injunction in which Qualls requested the Court to keep him out of the Iraqi theater during the pendency of this case. Qualls v. Rumsfeld, 357 F. Supp. 2d 274 (D.D.C. 2005). Now the Court's focus turns to the Doe plaintiffs and whether they may bring their challenge pseudonymously.

Before the court is defendants' Motion [30] to Unseal the Identities of Plaintiffs and the

1

opposition and reply thereto. The Doe plaintiffs were granted leave to file their complaint with pseudonyms by an order of the Chief Judge dated December 6, 2004. In that order and again on February 7, 2005, the Court ordered the Doe plaintiffs to file their real names under seal. Of the six, three have complied and three have not. Both parties agree that the plaintiffs who refuse to submit their real names under seal may not proceed in this case. As to the others, while defendants seek to compel the public disclosure of plaintiffs' real names, Doe plaintiffs request that their real names remain under seal and be shared only with defense counsel for the sole purpose of reasonably conducting the litigation. The Court, for the reasons set forth herein, will not permit Doe plaintiffs to proceed under pseudonyms, but will deny defendants' specific unsealing request.

The Federal Rules of Civil Procedure this Court's Local Civil Rules require that complaints state the names of parties; they make no provision for pseudonymous litigation. Fed. R. Civ. P. 10(a) ("In the complaint the title of the action shall include the names of all the parties."); LCvRs 5.1(e)(1), 11.1; Does I Thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000); Nat'l Commodity & Barter Ass'n v. Gibbs, 886 F.2d 1240, 1245 (10th Cir. 1989); S. Methodist U. Ass'n of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 712 (5th Cir. 1979). Federal Rule 10(a) requires that "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a). The Local Rules require that the "first filing on behalf of a party shall have in the caption the name and full residence address of the party." LCvRs 5.1(e)(1), 11.1. Requiring parties to disclose their identities furthers the public's interest in knowing the facts surrounding judicial proceedings. Advanced Textile, 214 F.3d at 1067.

Several circuit courts have condoned pseudonymous litigation. See e.g., James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993), Doe v. Stegall, 653 F.2d 180, 185-86 (5th Cir. 1981) Advanced Textile, 214 F.3d at 1067. The Supreme Court and the D.C. Circuit Court of Appeals have not expressly condoned this practice; though, from time to time they have permitted pseudonymous litigation to proceed without comment. See, e.g., Roe v. Wade, 410 U.S. 113 (1973); Doe v. Sullivan, 938 F.2d 1370, 1374 (D.C. Cir. 1991).

This District Court, like the D.C. Circuit Court, has not tackled the propriety of pseudonymous litigation head on, but this Court has developed an ad-hoc process that accommodates the practice. A litigant seeking to proceed under pseudonym may ask the Chief Judge, ex parte, for leave to file a complaint omitting the litigant's real name and full address. In effect, the litigant is asking the Chief Judge to waive the requirements of Federal Rule 10(a) and Local Civil Rules 5.1(e)(1) and 11.1. Leave is generally granted if the litigant makes a colorable argument in support of the request. If the Chief Judge grants leave to file, the litigant may then file a pseudonymous complaint and the case will be assigned to a judge just like any ordinary case. The Chief Judge's leave to file is only given "at this time," Qualls v. Rumsfeld, No. 04-2113 (D.D.C. Dec. 6, 2004), and does not guarantee that a litigant may proceed pseudonymously throughout the case; rather, the leave is an indication that the litigant's request is not frivolous and gets the case moving quickly, leaving the issue open to full, adverse litigation at a later date. See generally Does I Through III v. District of Columbia, 216 F.R.D. 5, 6 n.1 (D.D.C. 2003) ("Plaintiffs are proceeding pseudonymously, per order of the court, Chief Judge Hogan, docketed, Nov. 15, 2001."); Doe v. Sullivan, No. 91-51 (D.D.C. Jan. 11, 1991) (order of Chief Judge Robinson allowing "the filing of the complaint in this action under fictitious names and

without plaintiffs' residential address"); Oah v. Tabor, No. 90-1023, 1991 WL 120087, at *1 n.1 (D.D.C. June 18, 1991).

Whether a Judge may ever set aside the straightforward language of Federal Rule 10(a) and Local Civil Rules 5(e)(1) and 11.1 to allow parties to proceed under pseudonyms remains an open question in this circuit, but a question that this Court need not address today. Assuming pseudonymous litigation is acceptable in compelling circumstances, the court finds that such circumstances are not present here.

The circuit courts that have addressed the legitimacy of pseudonymous litigation permit such litigation to proceed in district court when the district court reasonably determines that the "need for anonymity" outweighs "the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." Advanced Textile, 214 F.3d at 1068. The "rare dispensation" of allowing parties to proceed pseudonymously is only justified in the "critical" case, James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993), or the "unusual case," Advanced Textile, 214 F.3d at 1067. Such critical or unusual cases may include those in which "identification creates a risk of retaliatory physical or mental harm, those in which "anonymity is necessary to preserve privacy in a matter of [a] sensitive and highly personal nature," and those in which the anonymous party would be compelled to admit criminal behavior or be subject to punishment by the state. Id. at 1068 (citing Doe v. Stegall, 653 F.2d 180, 185-86 (5th Cir. 1981); James, 6 F.3d at 238). Courts may be more inclined to permit pseudonymous suits by plaintiffs when the government is the defendant or when the plaintiff is a minor. James, 6 F.3d at 238; Stegall, 653 F.2d at 185. A plaintiff's desire "merely to avoid the annoyance and criticism that may attend any litigation" is not sufficient to justify pseudonymous proceedings. James, F.3d at

238.

Doe plaintiffs argue that, should their real names come to light, there would be a potential for increased tension within Doe plaintiffs' units and retaliatory conduct that could lead to Doe plaintiffs' injury or death while serving in combat. In support of this assertion, Doe plaintiffs note they are "fearful of retaliation" (Opp. at 3.) and submit the declarations of three unrelated third-parties.

The declarations do not persuade the Court. One declarant Charlie C. Carlson, III – a former staff sergeant who served in the Army for 14 years and in Iraq from 2003-2004 – tells how he would send email or letters to his father back in the United States and how his father would send these along to a newspaper that would publish them. The correspondence contained some comments critical of the President and the President's administration. Carlson, after a "15-6 investigation" for making disparaging comments about the President, was demoted to Sergeant, had pay suspended for six months, and was given 45 days of extra duty. Carlson considered this penalty "a bit harsh" and out of proportion with other punishments of violations with which he was familiar. (Carlson Decl. at 3.)

The second declarant, Adele Kubein, has a daughter on active duty who served in Iraq and is someone who conducts "peace activities." Once, Kubein made a statement on the unit's website opining that since the unit was back from Iraq, the unit's families might now work to end the war and thereby bring back all the troops. In the remainder of Kubein's declaration, which is unreliable hearsay, Kubein says that her daughter related her commanding officer's admonition that no one speak about their experiences in Iraq unless they wanted to put their careers in jeopardy. Kubenin further claims that when an article appeared about her own peace activities,

her daughter's sergeant told her daughter that he would smear Kubein's name in the press and that something would happen to her if she or her mother spoke out again.  Kubein alleges that her daughter was scared and thought she could lose her medical care.

The final declarant, Monica Bernderman, is the wife of a sergeant who, after a combat tour and after some soul-searching, sought conscientious objector status.  She alleges that the investigative officer in charge of the conscientious objector hearing was biased against her husband because the officer and her husband served in the same battalion and because her husband had spoken out about his beliefs.  As evidence, she attaches a "statement in rebuttal" and an addendum, both of which appear to be argumentative legal briefs, challenging the investigating officer's procedures and conclusions.  She did not include the investigating officer's response or his initial conclusions provoking her rebuttal.

These three declarations do not show the kind of risk of physical or other injury to Doe plaintiffs that would be necessary to permit them to proceed under pseudonyms.  As an initial matter, these declarations are weak evidence for pseudonymous litigation, both in this case and generally.  The declarations are all made by third parties and contain no discussion of the Doe plaintiffs ' particular situations.  Also, while each declaration alleges retaliation or bias against free-speaking military personnel and their families, none alleges retaliation in connection with bringing suit in court.  Further, all concern retaliation or bias against those who oppose the President, the Iraq war, or war in general, none speaks of retaliation against those who challenge the military's administrative policies.

Second, none of these declarations ever mentions a physical injury or the fear or threat of physical injury, the kind of harm Doe plaintiffs claim to fear.  The first declaration speaks of

economic harms – demotion and pay suspension – but these economic harms were a proper punishment, even if allegedly a bit harsh, that resulted from an internal Army investigation. Moreover, a threat of economic harm alone does not generally permit a court to let litigants proceeds under pseudonym.  Advanced Textile, 214 F.3d at 1070; S. Methodist U. Ass'n of Women Law Students, 599 F.2d at 710.  The other declarations, assuming for a moment that they are reliable evidence, likewise offer no showing of a threat or imposition of physical retaliation. The Kubein declaration mentions a vague fear of losing medical care, another economic harm. The Bendarman declaration speaks of bias in just one conscientious  objector proceeding, and while that bias could be viewed as leading to a retaliatory denial of objector status subjecting Mr. Benderman to dangerous combat, the allegations of Mr. Benderman's wife and two legal briefs, not the strongest evidence, leave the court unsure of whether the bias is in fact due to Mr. Benderman's views or just personal.

     That brings the Court to the final defect in these declarations:  the second and third declarants do not speak from personal knowledge; rather, they make claims based on what their daughter or husband allegedly confided in them.  The claims are unreliable hearsay.

     Doe plaintiffs ' general fears, like the declarations, do not persuade the Court of a need for pseudonymous litigation.  In support of the present motion, the Doe plaintiffs offer no declarations of their own.  In support of their initial request for permission to file the case with pseudonyms, Doe plaintiffs ' attorney, Staughton Lind offered a declaration in which he relayed the fears of the plaintiffs and quoted from plaintiffs' correspondence.  Several plaintiffs expressed concerns about the publicity that might ensue as a result of bringing this case.  One said, " [t]hings will get very difficult for me if my name is used." (Lind Decl. at 2.)  Another

said, "John Doe would be great, that would keep me out of the way of retaliation from members in my chain of command."  Id.  The Court understands that bringing litigation can subject a plaintiff to scrutiny and criticism and can affect the way plaintiff is viewed by coworkers and friends, but fears of embarrassment or vague, unsubstantiated fears of retaliatory actions by higher-ups do not permit a plaintiff to proceed under a pseudonym.  Doe v. Frank, 951 F.2d 320, 324 (11th Cir. 1992) ("The risk that a plaintiff may suffer some embarrassment is not enough."); S. Methodist U. Ass'n of Women Law Students, 599 F.2d at 713 (denying Title VII plaintiffs opportunity to proceed under pseudonym, because they "face no greater threat of retaliation than the typical plaintiff alleging Title VII violations").  Additionally, the Court, in its February 7, 2005 Order, considered the Lind declaration in denying named plaintiff David Qualls' motion for an order protecting him from retaliation.  The Court, both at that time and now, concludes that the "discussions amongst plaintiffs and their attorneys about unsubstantiated and vague concerns about filing the present lawsuit" do not show a likelihood of retaliation by the military in this case.

None of the evidence demonstrates that Doe plaintiffs are likely to face physical retaliation as a result of filing this lawsuit; therefore, they cannot proceed under pseudonyms.  Doe plaintiffs' other arguments are without merit.  The Doe plaintiffs assert that Doe v. Sullivan, 938 F.2d 1370 (D.C. Cir. 1991), permits soldiers in a combat zone to proceed under pseudonyms, but that case has no such holding and in fact never addresses the issue of whether pseudonyms may ever be used in litigation.  In fact, the issue of pseudonyms was never litigated in the District Court: the Chief Judge simply gave ex parte leave for the Sullivan plaintiff to initially file a complaint with pseudonyms.  The Chief Judge gave similar leave in this case, allowing plaintiffs

to proceed under pseudonyms "at this time." Qualls v. Rumsfeld, No. 04-2113 (D.D.C. Dec. 6, 2004). In both cases, it would have been entirely appropriate for defendants or for the Court to later question plaintiffs' use of pseudonyms and for the Court to review the issue de novo. In the present case, the government has raised a challenge to the use of pseudonyms; that never occurred in Sullivan.

Doe plaintiffs' remaining claim is that there is no legitimate reason to unseal the names for the benefit of the public and the media. First, having judicial proceedings fully open to the public so that the public may fully assess the merits of the lawsuit and the quality of the courts is in the public interest, Advanced Textile, 214 F.3d at 1067; see also Cowley v. Pulsifer, 137 Mass. 392. 394 (1884) (Holmes, J.), and is a legitimate reason to require unsealing Doe plaintiffs' names. Second, when courts require litigants to use real names, they encourage suits by the most zealous, passionate, and sincere litigants, those who are willing to place their personal and public stamp of approval upon their causes of action. While a few valid causes of action, by plaintiffs' own choices and calculations, may stay out of court, but so will many more frivolous and less heartfelt causes, which is in the interest of both the public and the courts. But see Jayne S. Ressler, Privacy, Plaintiffs and Pseudonyms: The Anonymous Doe Plaintiff in the Information Age, 53 Kan. L. Rev 195 (2005) (suggesting that, in the age of Internet search engines and electronic access to court dockets, it may be in the public interest to permit more pseudonymous litigation). More important, however, Doe plaintiffs have failed to perceive that federal courts operate openly by default and that a defendant facing a pseudonymous plaintiff need not come forward with reasons why this default procedure should be followed. Pseudonymous litigation is for the unusual or critical case, and it is the litigant seeking to

proceed under pseudonym that bears the burden to demonstrate a legitimate basis for proceeding in that manner.

For all these reasons, the Court will not permit Doe plaintiffs to proceed under pseudonyms. However, the Court will not give defendants the specific relief they request – the unsealing of the Doe plaintiffs' filing that contains real names and addresses – especially because one of the Doe plaintiffs named in that filing is not longer a party to this litigation. Rather, the Court will order plaintiffs to file an amended complaint complying with Federal Rule 10(a) and this Court's Local Civil Rules 5.1(e)(1) and 11.1, which require that a complaint caption contain the name and full address of each plaintiff.

Therefore, it is hereby

ORDERED that defendants' motion [30] is GRANTED IN PART and DENIED IN PART;

ORDERED that all claims of Does 4, 5, and 7 are dismissed without prejudice, as these plaintiffs declined to submit their real names to the Court under seal;

ORDERED that plaintiffs file, within 5 days, an amended complaint complying with this Court's Local Civil Rule 5.1(e)(1), which requires that a complaint caption contain the name and full address of each plaintiff;

ORDERED that any plaintiff who fails to provide his or her real name and full address will have their claims against defendants dismissed without prejudice.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, April 27, 2005.