UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID W. QUALLS, et al.,            )
                                    )
    Plaintiffs,                    )
                                    )
v.                                  )     Civil Action No. 04-2113 (RCL)
                                    )
DONALD RUMSFELD, et al.,            )
                                    )
    Defendants.                    )
                                    )

**MEMORANDUM OPINION**

This matter comes before the Court on the defendants' Motion [44] to Dismiss. Upon consideration of the defendants' motion, the opposition thereto, the reply brief, the applicable law, and the entire record herein, the Court concludes that the defendants' motion will be granted. The Court agrees with the defendants' contention that plaintiffs have failed to state any claim upon which relief may be granted. Moreover, plaintiff Qualls' challenge is mooted by the fact that Qualls voluntarily extended his period of service in the military.

**BACKGROUND**

On July 7, 2003, David Qualls enlisted in the Army National Guard in Arkansas. Initially his enlistment term was one year. But on October 10, 2003 Qualls' duty status changed "from voluntary service to involuntarily extended." On October 19, 2003, he was ordered to active duty for two years in support of Operation Iraqi Freedom. Qualls arrived in Iraq on March 5, 2004. On February 1, 2005, Qualls voluntarily extended his expiration of term of service ("ETS") in the National Guard for an additional six years, from January 31, 2005 until January 31, 2011. Because Qualls voluntarily re-enlisted with the National Guard and the Army Reserve, he

collected a $15,000 re-enlistment bonus. On May 2, 2005, Qualls was released from active duty service in Iraq and returned with his unit to Arkansas.

Rafael Perez entered military service in 1999 and served four years on active duty. On August 19, 2003, near the end of his active duty term, Perez signed an agreement to enlist in the Army National Guard for two years, six months and six days – until June 26, 2006 – a period that constituted his remaining service obligation. In accordance with his enlistment, Perez served the first year of active National Guard duty in Arizona. On September 22, 2003, Perez was released from active duty in and began his Reserve obligation. On August 25, 2004, he was ordered to active duty in Iraq for 545 days. Perez is scheduled to return to the United States early in 2006, before his military service obligation expires on June 26, 2006.

Qualls and seven "John Doe" plaintiffs filed suit on December 6, 2004 challenging the military's "stop loss" policy. Qualls, who was in the United States on temporary leave from service in Iraq at that time, also sought a temporary restraining order and preliminary injunction against his return to duty, which the Court denied after a hearing. On March 4, 2005, defendants filed a motion to obtain the identities of the seven "John Doe" plaintiffs, and on April 27, 2005, the Court ordered that those plaintiffs be identified. On May 10, 2005, plaintiffs filed an amended complaint that dropped six of the "John Doe" plaintiffs and identified only Qualls and Perez. After a status conference on August 31, 2005, the Court ordered defendants to file a motion to dismiss or answer the amended complaint. (See Order dated August, 31, 2005.) This motion followed.

## DISCUSSION

**A.     Legal Standard**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiffs bear the burden of establishing that the court has jurisdiction. In turn, the court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," See <u>Grand Lodge of Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp.2d 9, 13 (D.D.C. 2001), which includes the obligation to determine whether the plaintiffs' claims are moot. See <u>Mine Reclamation Corp. v. FERC</u>, 30 F.3d 1519, 1522 (D.C. Cir.1994). A court may consider material other than the allegations of the complaint in determining whether it has jurisdiction, but must accept the factual allegations in the complaint as true. See <u>Jerome Stevens Pharmaceuticals, Inc. v. FDA</u>, 402 F.3d 1249, 1253-54 (D.C.Cir.2005).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, (1957); <u>Barr v. Clinton</u>, 370 F.3d 1196, 1199 (D.C.Cir.2004) (citing <u>Kowal v. MCI Commc'ns Corp.</u>, 16 F.3d 1271, 1276 (D.C.Cir.1994)). However, the Court need not accept asserted inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. <u>Kowal</u>, 16 F.3d at 1276. The Court will dismiss a claim pursuant to Rule 12(b)(6) only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>, 355 U.S. at 45-46.

Defendants argue that plaintiff Qualls' claim is moot because he voluntarily re-enlisted in the military in February 2005. Additionally, defendants argue that plaintiffs do not state any claim for which relief may be granted. Plaintiffs respond that this Court has already held that a

"live dispute" exists as to whether Qualls' contract had any language allowing for involuntary extension of his term. Qualls also contends that the claims are not moot because his fraudulent extension of his National Guard "Try One" contract resulted in "draconian economic consequences" that left Qualls with no other option but to re-enlist in 2005. (Pls.' Opp'n 6.) The Court is not persuaded by plaintiffs' arguments.

**B.     Mootness**

Federal courts may decide only "actual, ongoing controversies." Clarke v. United States, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (en banc) (quoting Honig v. Doe, 484 U.S. 305, 317 (1988)). "Even where litigation poses a live controversy when filed, the doctrine [of mootness] requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" Id. at 701 (citation omitted).

By voluntarily re-enlisting, Qualls' entire case has been mooted. His initial term of service in the National Guard ran from his enlistment on July 7, 2003 until July 6, 2004. This one-year term of service was extended pursuant to the "stop loss" policy. The complaint was filed in December 2004, and Qualls' claim was an "actual, ongoing controversy" until February 2005. But when Qualls voluntarily re-enlisted in the military in February 2005, his challenge to the involuntary extension of his enlistment under "stop loss" became moot because judicial invalidation of the "stop loss" extension of his 2003 National Guard contract can no longer affect Qualls' rights.

As the Supreme Court in Spencer v. Kemna stated, "mootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we

were disposed to do so." 523 U.S. 1, 18 (1998). Because Qualls is no longer serving pursuant to the allegedly unlawful extension of service that forms the basis of his entire action, there is nothing to remedy. Only Qualls' obligation to the military under the "stop loss" extension would be affected by a favorable judicial disposition of Qualls' claims, and the extension was terminated when Qualls voluntarily entered into a new six-year enlistment with the National Guard. The Court concludes that Qualls' claim is moot, and will dismiss it accordingly.

**C.    Economic Duress**

Qualls also contends that his re-enlistment on February 1, 2005, for a new six-year term, was involuntary because he was under economic duress when he decided to re-enlist. Qualls claims that in order to stave off bankruptcy, salvage his business, and provide for his family, he had no other choice but to accept the $15,000 re-enlistment bonus . (Pl's. Opp'n 6-7.) The Court is not persuaded by Qualls' argument, which amounts to nothing more than a thinly veiled attempt to escape the consequences of his actions.

In general, to prove economic duress a plaintiff must establish: (1) a wrongful act or improper threat; (2) the absence of a reasonable alternative to entering the agreement; and (3) the lack of free will. Applied Genetics Int'l, Inc. v. First Affil. Securities, Inc., 912 F.2d 1238, 1242 (10th Cir. 1990). Qualls fails to establish any of these elements.

There is no evidence in the record of any government wrongdoing associated with Qualls' voluntary re-enlistment. Qualls also had a viable alternative to re-enlistment – namely, not re-enlisting. In fact, if he chose not to re-enlist, Qualls would have been released on approximately July 31, 2005. It is ironic that Qualls is trying to maintain an action seeking his release from the military when he himself precluded that very outcome. Finally, the Court finds that Qualls did

not lack "free will" when he chose to re-enlist. Financial considerations are a part of anyone's decision-making process when choosing among potential careers. Though financial issues may have been paramount in Qualls' thought process, he was not forced to sign his name on the dotted line and raise his right hand when sworn in. To allow individuals to accept bonuses and then at a later date claim economic duress would both open the floodgates of litigation on such claims and fundamentally undermine the military recruitment process. The Court refuses to go down that path.

### D.     Fraudulent Inducement and Material Misrepresentation

Rescission of an enlistment contract is proper if the recruit was induced to enter into the contract by fraud or false representations. Brown v. Dunleavy, 722 F. Supp. 1343, 1350 (E.D. Va. 1989); Withum v. O'Connor, 506 F. Supp. 1374, 1378 (D.P.R. 1981) (citing Chalfant v. Laird, 420 F.2d 945, 945 (9th Cir. 1969)). This is so even if the misrepresentations were innocently or non-negligently made. Withum, 506 F. Supp. at 1378. The recipient of the alleged misrepresentation must demonstrate that the maker made an assertion that was: (1) not in accordance with the facts, (2) that was material, and that (3) was relied upon (4) justifiably by the recipient in manifesting his assent to the agreement. Barrer v. Women's Nat'l Bank, 761 F.2d 752, 758 (D.C. Cir. 1985)

Plaintiff Perez alleges that he was falsely assured by a recruiter that he could try out the National Guard for one year through the "Try One" program, and that after the one year he would have no further commitment unless he voluntarily chose to make one.[1]  (Amend. Compl. 8.)

---

[1] The Court treats Perez's other initial claims as conceded since he failed to respond to defendants' motion to dismiss his claims for breach of contract, absence of statutory authority, and lack of due process. See LcvR 7.1(b).

Defendants contend that neither his recruiter's actions, nor the Government's actions in later applying "stop loss" to extend Perez's enlistment, rise to the level of material misrepresentation. (Defs.' Mot. 2.) The Court is compelled to agree with defendants.

As evidence of the representations that the Army makes, plaintiffs submitted Army recruiting materials from the Army National Guard's website. The webpage states that Try One "allows a veteran to serve for only one year on a trial basis before committing to a full enlistment." (Pl.s' Mot. for TRO, Exhibit 2.) As this Court stated in discussing Qualls' fraud claim earlier, "the contract, with its statement of United States laws, does indeed put Qualls on notice that the Army might involuntarily extend his term of service." Qualls v. Rumsfeld, 357 F. Supp. 2d 274, 285 (D.D.C. 2005). Moreover, "the parties to the contract understood and intended that many laws and regulations not set forth in the contract would govern," including "pre-existing" laws such as 10 U.S.C. § 12305 (the "stop loss" policy). Santiago v. Rumsfeld, 425 F.3d 549, 560 (9th Cir. 2005). So too, was Perez on notice when he first enlisted in 1999 that the Army may extend his service involuntarily.[2]  Further, he had over four-years of active duty military experience to become familiar with conditions in which service may be involuntarily extended.

Here, even assuming, Perez meets the first three requirements of a prima facie claim of fraudulent misrepresentation, he has not produced any evidence that he justifiably interpreted his service in the "Try One" program to be exempt from "stop loss." In light of Perez's prior

---

[2] In fact, Perez has been on notice of the possibility of "stop loss" since first entering the military on September 23, 1999. His enlistment contract informed him that he could be involuntarily called to active duty in a variety of circumstances, including a presidentially declared national emergency, as well as a war or national emergency declared by Congress. See DD Form 4/1 Reverse, Partial Statement of Existing United States Laws.

service, his enlistment contracts and exposure to military enlistment policies, the Court cannot assume justifiable reliance in the absence of any evidence.

Furthermore, the Court can find no fraudulent misrepresentation in the recruiter's explanation of the "Try One" program.  There is nothing in the record that showed the recruiter misled Perez, or indeed, told him anything that was inconsistent with his enlistment contract.  Perez interpreted his rights and duties after talking with his recruiter differently from the terms in his enlistment contract.  But like most recruiters in the military, Perez's recruiter did not discuss the rare occurrences of the military's "stop loss" policy nor did Perez ask about that policy.  As unfortunate as this may be, there was no affirmative misrepresentation made by his recruiter.  After all, the recruiter was not dealing with a brand new enlistee out of high school but rather a veteran.  Moreover, plaintiffs have failed to direct the Court to any case finding that fraudulent misrepresentation exists when a recruiter fails to state a situation that may or may not arise during an enlistment period.

The Court finds that the Army's proper exercise of statutory and regulatory authority to extend Perez's enlistment is not fraudulent.  Accordingly, Perez's claims will be dismissed.

## CONCLUSION

For the reasons stated herein, the Court will grant the defendants' motion to dismiss the plaintiff's claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.

A separate Order will issue this date.

Signed by Royce C. Lamberth, United States District Judge, January 24, 2006.